**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

Plaintiff,

vs.

MIAMI CHILDREN'S HEALTH SYSTEM, INC.
d/b/a www.miamichildrens.com,

Defendant.

---

# COMPLAINT

---

COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Miami Children's Health System, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), 28 C.F.R. Part 36 and alleges as follows:

## INTRODUCTORY STATEMENT

1. Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Miami Children's Health System, Inc.'s business.

2. Businesses can make choices (unlike visually impaired individuals) and can either make their businesses inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3. When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4. This case arises out of the fact that Defendant Miami Children's Health System, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5. Defendant Miami Children's Health System, Inc. (also referenced as "Defendant") owns and operates places of public accommodation under the name "Miami Children's Hospital" and/or "Nickalus Children's Hospital" which are medical facilities which include (among other things) the Nickalus Children's Hospital, outpatient clinics, medical offices, diagnostic centers, and pharmacies (heretofore referred to as called "medical facilities").

6. This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant

effectively and timely such that their access to Defendant's medical facilities locations are not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

**JURISDICTION & VENUE**

7. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the ADA and/or Section 504.

9. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting, business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, Defendant's Nickalus Children's Hospital, outpatient clinics, medical offices, diagnostic centers, and pharmacies are located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a domestic not-for-profit corporation.

10. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

**THE PARTIES**

**Andres Gomez**

11. Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and Section 504 of the Rehabilitation Act.

12. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

13. Plaintiff cannot use the computer without the assistance of screen reader[1] software.

**Miami Children's Health System, Inc.**

14. Defendant Miami Children's Health System, Inc. (also referenced as Defendant) is a Florida non-profit corporation with its principal place of business in Miami-Dade County, State of Florida, and does business as Miami Children's Hospital, Nickalus Children's Hospital, Main Campus Urgent Care Center, Gladys M. & Frederick Stewart Pediatric Care Center, Nicklaus Children's Dan Marino Outpatient Center, West Bird Outpatient Center, West Kendell Outpatient Center, Palmetto Bay Outpatient Center, Doral Outpatient Center, Dan Marino Outpatient Center, Palm Beach Gardens Outpatient Center, Midtown Outpatient Center, Miramar Outpatient Center, Miami Lakes Outpatient Center, Stuart Outpatient Cardiology Office, Aventura Care Center, and Ambulatory Surgery Center (referenced as "Miami Children's Health System's medical facilities" or "medical facilities").

[1] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

15. Upon information and belief, at all times material hereto, Defendant (directly or through shell corporations), owns, operates, and/or manages the day-to-day affairs of the Miami Children's Health System's medical facilities.

16. Upon information and belief, Defendant is a recipient of federal Medicaid and Medicare funds and/or is the recipient of federal funds through the Affordable Care Act subsidies which could cover certain of the medical procedures performed at Defendant's medical facilities and is therefore subject to the requirements of Section 504 of the Rehabilitation Act.

17. In order to receive federal funding (directly or indirectly), Defendant is required to develop policies and procedures that ensure that persons who are blind or visually impaired will receive adequate and effective communication.

18. Further, each time Defendant re-certifies for federal (i.e. Medicaid or Medicare) funding, Defendant promises to provide and adhere to such policies.

## FACTS

19. Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

20. Plaintiff frequently utilizes the internet. Due to the fact that he is legally blind, in order to effectively communicate and comprehend information available on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

21. At all times material hereto, Defendant Miami Children's Health System, Inc. was (and is) an organization owning and operating medical facilities under the name "Miami Children's Health System" consisting of Nickalus Children's Hospital, outpatient

clinics, medical offices, diagnostic centers, and pharmacies ("medical facilities"). Each of Defendant's medical facilities is open to the public as a provider of primary and urgent medical care. As the owner and operator of Miami Children's Health System medical facilities, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates a professional office of a health care provider, hospital, pharmacy, or other service establishment as defined in 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

22. By virtue of being a health care provider (hospital, outpatient clinics, medical offices, diagnostic centers, and pharmacies) open to the public, each of Defendant's medical facilities are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36, and are referenced throughout as "medical facilities," "Place(s) of Public Accommodation," or "Miami Children's Health System."

23. The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at www.miamichildrens.com ("Website").

24. Defendant's Website permits the public to (among other things): i) request an estimate for specific types of medical services on-line, ii) obtain information on specific ailments which medical service providers at Defendant's medical facilities are able to treat, iii) use a search engine locator for pediatric physicians for specific ailments, iv) inquire about Medicare and Medicaid covered medical services, v) to inquire about financial assistance and discounted pricing, vi) download forms to request copies of

medical records, vii) obtain location and direction information for the Defendant's various medical facilities (as delineated at ¶ 14 above), and other information the Defendant seeks to communicate to the public related to Defendant's medical facilities, and another function is to provide auxiliary aids and services for the disabled. The Website is an integral part of the provision of medical professional services by Defendant. By this nexus, the website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[2], 28 C.F.R. §36.104(2), and Section 504 of the Rehabilitation Act.

25. The Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

26. Plaintiff Andres Gomez is in need of medical services such as offered by and through Miami Children's Health System.

27. Plaintiff called Defendant to find out about specific ailments that are treated at Defendant's medical facilities and to locate a medical provider within Defendant's medical facilities. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

28. During the month of December 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to specific ailments which are treated at Defendant's Miami Children's Health System with the intention of making

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

an appointment, which would make it possible for Plaintiff to could go to Defendant's medical facilities' physical locations.

29. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

30. The Defendant's business contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendant's Website.

31. The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms; such as (in this instance) to inquire about medical ailments treated at Defendant's medical facilities and obtain quote for the medical services in order to make an appointment.

32. The Plaintiff attempted to locate an ***Accessibility Notice***[3] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

33. The fact that Plaintiff could not communicate with Defendant left him excluded from accessing Defendant's physical locations, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

[3] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

34. Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical locations in order to participate in the services offered at Defendant's medical facilities. Plaintiff's inability to communicate with / comprehend Defendant's Website has impeded Plaintiff's ability to patronize Defendant's physical Places of Public Accommodation. As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

35. On information and belief, Defendant has not initiated an ADA Policy to insure full and equal use of their business by individuals with disabilities.

36. On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

37. On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

38. On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

39. On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

40. On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

41. On information and belief, Defendant has not created a Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.miamichildrens.com website, Applications, and Digital Assets accessible to the visually impaired community.

42. On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[4].

43. On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

44. On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

45. On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

46. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided at its business.

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

47. Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

48. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.miamichildrens.com website.[5]

49. On information and belief, the Defendant is aware of its barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

50. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

51. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

52. According to the National Federation for the Blind[6], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

---

[5] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[6] Statistics for 2012, see http://www.NFB.org/blindness-statistics

53. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

54. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

55. Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

56. Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-55 above.

**Requirement for Effective Communication**

57. It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

58. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

59. Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. “In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability,” 28 C.F.R. §36.303(c)(1)(ii).

60. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

61. Defendant’s Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant’s Business is A Place of Public Accommodation**

62. By virtue of Defendant’s business being medical facilities wherein Defendant is a health care provider (hospital, emergency center, operator of various clinics, provider of medical providers’ offices, and pharmacies) open to the public, each of Defendant’s medical facilities are a place of public accommodation subject to the requirements of Title III of the ADA as a pharmacy, insurance office, professional office of a health care provider, hospital; 42 U.S.C. §12181(7)(F).

63. As Defendant’s medical facilities are each a Place of Public Accommodation, the ADA prohibits any and all barriers which would limit access by the visually impaired.

64. When the visually impaired are prohibited from obtaining information to determine medical ailments treated at specific medical facilities and prohibited from learning about and choosing a medical care provider at that those medical facilities for the purpose of providing urgent and primary medical care, those visually impaired individuals have been barred from accessing that medical care provider/medical facility.

65. The virtual barrier to access is just as real as a physical barrier to access, for without information as to acceptability of insurance, and ability to investigate and choose a medical provider, the visually impaired have no access to the goods and services of that medical facility, which is both a Public Accommodation and a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

66. The Department of Justice ("Department") has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[7].

67. The Court has held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

[7] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

68. Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[8]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

69. Pursuant to 42 U.S.C. §12181(7)(F), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.miamichildrens.com website, as defined within §12181(7)(F), and is subject to the ADA.

70. Additionally, www.miamichildrens.com is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(F). Further, the Website also serves as an integral part of Defendant's Miami Children's Health System primary and urgent care medical facilities, by providing the public information on the various locations of Miami Children's Health System medical facilities (hospital, outpatient clinics, medical offices, diagnostic centers, and pharmacies), and offers the public the ability to (among other things) obtain a quote for the provision of medical services, to inquire about the those of medical ailments treated at the various facilities, to obtain

[8] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

information on pediatric professionals at those medical facilities, and to inquire about clinic and hospital admissions, financial assistance and billing information.

71. In addition, Defendant's representatives within its physical medical facilities locations refer customers to Defendant's Website for additional information as the Website provides information regarding which health insurance carriers accept the medical providers at Defendant's facilities, which is an integral part of the public's needs with respect to Defendant's business.

72. By Defendant's representatives referring the public / visually impaired individuals to its Website, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business locations.

73. It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

74. The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v.*

*Netflix, Inc.*, 869 F. Supp. 2d at 200 (D. Mass. 2012)[9] *Netflix*, (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[10] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd*, 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

75. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

76. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

---

[9] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[10] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

77. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

78. As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Defendant's physical locations as Defendant has made available to the public through the information provided on its Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

79. Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

80. A sampling review of just part *of the* Defendant's Website revealed that the Website is not functional for users who are visually impaired. The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

81. Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

82. More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

83. Defendant's website contains a multitude of links to PDF attachments. The PDF attachment's flat surface does not contain accessible coding. Examples of several links are provided within Defendant's Website include (but are not limited to): https://www.nicklauschildrens.org/patients-and-families/medical-records where PDF attachments are provide for: Consent for Release of Information form (ROI), Protected Health Information Form request, Request Copy of Medical Records, Request Electronic Copy of Medical Records, and Request Amendment to Medical Records. Further Defendant provides links to PDF attachments for admissions and registration at https://www.nicklauschildrens.org/patients-and-families/patient-financial-services/registration-documents which provides PDF forms such as its Consent to Treatment form (see https://www.nicklauschildrens.org/ NCH/media/docs/pdf/Patient Access/GeneralConsentForTreatment_2016_English.pdf. The PDF documents do not

include a text-based format (or equivalent), and Defendant has not added 'alt[11]' tags or long descriptions for the PDF within its website. The PDF attachment has not been provided in HTML or with a text equivalent, and is not a webpage[12]. Therefore, the PDF attachments are inaccessible to the visually impaired.

84. Further, the Website does not offer include the universal symbol for the disabled[13] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

85. There are readily-available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

86. The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

---

[11] 'alt' refers to 'alternative text'

[12] (which is an internet document usually in HTML)

[13]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

87. As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

88. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.miamichildrens.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.miamichildrens.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of (among other things) the public viewing and locating Defendant's physical locations, obtaining information on medical services provided, obtaining quotes on cost for medical services required, and inquiring about clinic and hospital admissions, financial assistance and billing information online. During that time period prior to the Website being designed to permit individuals with

visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate with Defendant through Defendant's Website and through Defendant's physical medical facilities locations.

89. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by the Defendant.

**COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

90. Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-89 above.

91. Plaintiff is legally blind, which substantially limit him in his major life activities, including his ability to effectively communicate in the sighted world. Therefore, Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

92. Defendant is a recipient of federal financial assistance by virtue of receipt of Medicaid payments, as well as other federal financial assistance.

93. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

94. Defendant was aware that its Website does not interface with screen reader software used by the Visually Impaired.

95. By virtue of the fact that Defendant operates a diverse medical facility, Defendant knew or should have known that blind and visually impaired individuals are very likely to utilize medical services Defendant provides through Defendant's medical facilities.

96. Specifically, as related to violations of Section 504, blind and visually impaired individuals need to comprehend the covered Medicare and Medicaid medical services which Defendant provides. Yet, Defendant's Website is not equipped to provide interface for blind and visually impaired individuals by being programed to interface with screen reader software. Thus, Defendant has failed to provide Plaintiff (and other blind and visually impaired individuals) *any* appropriate and effective auxiliary aids and services for use with its Website.

97. Because of the failure to provide effective communication, Plaintiff (and other blind and visually impaired individuals) has an incomplete understanding of the medical services provided, billing, financing, and appointments at Defendant's places of business.

98. The failure is so egregious that individuals who are visually impaired are (among other things) unable to (among other things): i) request an estimate for specific types of medical services on-line, ii) obtain information on specific ailments which medical service providers at Defendant's medical facilities are able to treat, iii) use a search engine locator for pediatric physicians for specific ailments, iv) inquire about Medicare and Medicaid covered medical services, v) to inquire about financial assistance and discounted pricing, vi) download forms to request copies of medical records, vii) obtain location and direction information for the Defendant's various medical facilities

Such failure has impeded individuals who are visually impaired from independently accessing (access to) Defendants medical facilities.

99. Accordingly, Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) in the equal use of its facilities and as a result, Plaintiff has experienced exclusion, segregation, mental anguish, and humiliation in violation of his civil rights.

100. As such, Defendant has failed to provide services to Plaintiff (and other blind and visually impaired individuals) as Defendant would have provided a similarly situated sighted patient.

101. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

102. Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are blind or visually impaired, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

103. Defendant's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Plaintiff (and other blind and visually impaired individuals).

104. As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and experienced emotional suffering, pain and anguish.

105. Plaintiff will continue to face discrimination, as Defendant's medical facilities are located in close proximity to Plaintiff, and Plaintiff continues to desire

to utilize medical services available at Defendant's facilities.

106. For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Miami Children's Health System, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA and Section 504 of the Rehabilitation Act;

b) The Court enter an Order requiring Defendant to update its www.miamichildrens.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA and Section 504 of the Rehabilitation Act;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[14] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.miamichildrens.com website;

---

14

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA and Section 504;

e) The Court enter an Order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant to create policies, practices and procedures toward persons with visual disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to its Website;

g) The Court award damages in an amount to be determined at trial;

h) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

i) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 14th day of March, 2017.

Respectfully submitted,

s/Scott Dinin
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*